And if we're set, then counsel for appellant may proceed. Good morning, Your Honors. If it may please the Court, Ernest Franceschi, the appellant. What we have here in this situation is a district court that used this case to advance its own agenda in a judicial activism fashion. The decision that was rendered by the district court came without any opportunity for briefing, no opportunity to be heard, and was rendered sui sponte. The only issues that were before the court on the motion of dismiss were the amount in controversy. That decision, the district court made, found there was amount of controversy had been made, and then without notice or opportunity to any party, rendered its written decision. Not as to what this case is about, and what this case is not about, is an attempt to regulate gaming practices in Nevada. This case is a false advertising case brought under California law. Did you rely upon the alleged false advertising? And do you allege that you relied upon that alleged false advertising? Yes, Your Honor. We – I did rely on that. And under California – How did you rely? I'm sorry? How did you rely? I actually got invitations to come and play at these casinos by mail, telephonically, by e-mail. And you had no suspicion that they wouldn't like you if they turned out they discovered you were a card counter? Well, there's no evidence that I'm a card counter before the record. But the problem is, well, now I know that this is the predominant practice in the industry. But at the time I responded to these invitations, I didn't know. Do you allege in your brief that you relied upon the invitations? Do you identify any of the advertisement you say was misleading? Yes, Your Honor. They're actually appended to the complaint, and that's in the appendix. We actually have exemplars of the type of advertisements that were sent. And they're found in the record. I appreciate you talking about what's found in the record, but I am like my colleague. I'm finding a tough time in your complaint where you say you relied on them. Well, the reliance is implicit. It's implicit in what? Don't you have to allege that in your complaint? Well, the advertisements are appended to the complaint. Now, if it's a question of reliance not being explicitly pled, the remedy should have been leave to amend, not a su sponte dismissal with prejudice without any warning. So I think the district court erred there. And clearly, if it's not explicitly stated in the complaint, it's implicit, and it's an issue that could have been cured by a simple amendment. And that's something that should be remanded if that's the issue here with the court. But the problem here is the district court went on to pontificate about a casino's common law right to exclude and actually attempted to make a ruling as to what the common law of Nevada is on that subject. And the Nevada Supreme Court has not spoken, neither has the Gaming Commission. Now, the only case that's directly on point is Houston v. Resorts International. And in that case, the New Jersey Supreme Court found that the Gaming Control Act in New Jersey, which is very analogous to the one in Nevada, preempts any common law rights. Now, but the Gaming Control Court is the Nevada statute similar to the New Jersey statute in that respect? Well, it is. Because in the Nevada statute, and we can actually ‑‑ it's NRS 463.0129. That's the explicit legislative findings and declaration of public policy. And what the legislature did is that it preserved the common law right of access. And that's ‑‑ Well, but it didn't stop there. I mean, you know what section I'm asking about, so why don't you turn to subsection 3 and tell me why that doesn't serve to distinguish the Nevada statute from the New Jersey statute. Actually, this harmonizes the two. Because subsection 3 is a preservation of the casino's common law right to exclude the unruly patron. I believe that's what the legislature intended. Well, that isn't what it says, is it, counsel? Well, that's not exactly what it says, but ‑‑ Not even remotely what it says. Well ‑‑ Let's read it together if we need to. But we need ‑‑ This section does not abrogate or abridge any common law right of a gaming establishment to exclude any person from gaming activities or eject any person from the premises of the establishment for any reason. Yes. Do you see the word unruly in there any place? No, but there's a ‑‑ What rule, what adjective or noun do you see that supports your proposition? There's two components to the common law here. One is the public's right of access. And that's directly stated in subpart E. And then the other part is the casino's right to exclude patrons, which is limited by the public right of access. And what the New Jersey Supreme Court stated was that there has to be a balancing. There has to be a reasonable basis for the exclusion. And they explicitly state that in the Houston decision. Now, what we have here are casinos, if they think you're a card counter or an advantaged player, deeming you such and ejecting you. That's kind of like McCarthyism, where if you're suspected of un‑American activities, you're a communist. But at least Senator McCarthy gave you ‑‑ Card counters, communists, they both start with C. But beyond that, I don't know. So does Clifton. So who's to say? My question started with, isn't the Nevada statute at least different from the New Jersey statute? Is there anything like this provision in New Jersey? There's semantical differences. They're not carbon copies. The overriding purpose is the same. The overriding purpose is to regulate ‑‑ I don't think you answered Judge Clifton's question. I'd really like to have an answer. Is there anything in the New Jersey statutes that is similar to this? I believe the New Jersey statute says that it's the intent of the legislature to promote and maximize customer participation. Is there anything in the New Jersey statute that refers to a common law right of a gaming establishment to exclude any person from gaming activities for any reason? I don't believe so. But the New Jersey Supreme Court, in interpreting that statute, placed a qualification and limitation on it. Placed that on the New Jersey statute? Yes, Your Honor. They didn't interpret the Nevada statute, did they? Well, there really isn't a substantive difference. Well, you just told us finally that there wasn't a provision in the New Jersey statute like the one that's in the Nevada statute. Well, those specific words aren't there. But the way the New Jersey statute was being implemented is the same way it's being implemented here under the Nevada rules. And the New Jersey Supreme Court found that there has to be a reasonable basis for exclusion. And it traced back the common law and what occurred after the Civil War where basically the patron's right of access got the short shrift. There's a Nevada statute that refers to the common law. Right. And which provision is that? I believe that's subpart E. No, that's in 463. But there's another provision in the Nevada revised statute that actually incorporates the common law as the law of Nevada. You know which section I'm referring to? Not offhand, Your Honor, but I believe the common law of Nevada is similar to what the common law originally was and that there's a qualification on the unfettered right to exclude from public places that has to yield to the public right of access. Now, nobody's arguing that an unruly patron or a dangerous patron can't be excluded. So you take for any reason to mean dangerous patron? A dangerous, an unruly patron, someone who's committing a criminal offense. Any context you can think of where for any reason is limited to dangerous or unruly patrons? Well, the reasons are qualified based on the right of access. And if you look at the New Jersey Supreme Court's decision, it pretty much spells out those limitations. Now, that's not what this case is about. This is actually a very interesting academic discussion. But this case has nothing to do with the common law of Nevada. This case has to do whether or not the advertising of these casinos to solicit customers from California to travel to Nevada without disclosing that they're going to exercise unfettered discretion in barring them if they think they're a card counter or an advantaged player. That's an unfair practice that needs to be disclosed. And that's an issue that turns on California law. The district court completely gave that the short shrift, finding that, well, the common law of Nevada. Just a minute. The district court really relied on a reasonable consumer test, as I understand it. And the district court said in regard to the reasonable consumer test that you weren't such a reasonable consumer, that that was a person of ordinary intelligence that was likely to be deceived and not some particular disadvantaged or vulnerable group. They seemed to go, or the district court seemed to go on that idea. And then I didn't see you appeal that at all. Well, Your Honor, we addressed that. Where do you address it? Well, the reasonable consumer. It seemed to me you didn't address it at all, but instead said nothing about it. And therefore, I wondered if you were just waving your argument about that. No, Your Honor. We cited the Kwikset case. The Kwikset case is a cite to the Kwikset case said you were challenging what the district court said on reasonable consumer. No. What we said, well, the reasonable consumer goes to the common law fraud claim. That really has nothing to do with the UCL and the CLRA or statutory causes of action. So common law fraud is dropped out of the case now? Common law fraud is not dropped out of the case. But the gravamen, the thrust of this case, is a relief under the CLRA and the UCL. And that has nothing to do with reasonable consumers. I'm not trying to bicker with you. I'm trying to clarify what's at stake. I didn't see anything in your brief that put the common law fraud issue back on the table. It seemed to me you were focusing on the California statutory arguments as you have during the oral argument today. Is there something? Have you made an argument with regard to common law fraud? We have, Your Honor. It's in our opening brief and as well as the reply brief. I can point it out here. Over time, I'll give you a minute for rebuttal and you can point it out at that time. Okay. It's in section 2 of the reply and also. Now, the issues don't get defined by the reply brief. If you want to search your opening brief when you sit down, you can come back and show us where it's there. I haven't found it. It's also in section Roman numeral 8. And if I may have a minute for reply, Your Honor, I would have it. I see you're using it up right now. I invited you 30 seconds to sit down and you decided not to do it, so. We'll hear for counsel for Appellee. Good morning, Your Honors. My name is Nick Santoro and I'm appearing today along with my colleague Jason Smith on behalf of the appellees. We ask the Court to affirm the ruling of Judge Hunt wherein he dismissed sua sponte both the common law fraud and the statutory claims that Mr. Franceschi has brought. Let me start where Your Honor left off, which was common law fraud, which I believe can be easily disposed of. The action here is not an action for express misrepresentation. In other words, Mr. Franceschi does not claim that any of these advertising materials say we welcome card counters, nothing of the sort. The action is one for omission. He claims that there was a violation of some duty to disclose this policy that the casino has to bar and not serve card counters. The action fails because an action for nondisclosure in fraud requires a duty to disclose, and that duty is generally founded on some special relationship. As a matter of law, there is no special relationship between casino and gambler in courts of so held. And in the Missouri Court of Appeal case of 2001 Ziegler, which we cited, the very same fact pattern, that court held that the casino was under no legal duty to disclose its policy of barring card counters to the card counters. So as a matter of law, the claim for common law fraud fails because there is no legal duty. Now, turning to what appears to be the appellant's main argument, which is the two California statutory claims, the unfair competition law and the Consumer Legal Remedies Act, both of these claims require some unfair business practice for the court to enjoin or enter injunctive relief. It is not possible for the plaintiff to obtain relief under either of those statutes because as a matter of law, if the challenge conduct has been deemed lawful, it cannot form the basis for an unfair business practice claim within the meaning of the statute. What does deemed lawful require? Deemed lawful requires a legislature to say that the conduct has been deemed lawful. That's the safe part. Has either the California or Nevada legislature so pronounced? Yes. The Nevada legislature, which is really applicable because we're talking about the Nevada statute, which created gambling in Nevada, 463.0129. Now, is there any California application of these statutes that have turned to the legislature of a different state or the statutes of a different state to define lawfulness? None that I have seen cited in any of the briefs, Your Honor. So I think what we're left with – An unusual situation, but I hadn't found one either. Yes, didn't see that. But clearly – Do we have any comparable practice in California? I realize that most of the casinos in California are Indian-based, but do you know whether there's a comparable practice among the Indian casinos in California? I do not, and we did not see any decisions on that, Your Honor. I think it's because of the fact that it's limited to the Indian reservations. I don't think we have the same body of law developed in California that we do in Nevada. But fortunately, in Nevada, we started the statute to determine that there is, in fact, a safe harbor here. Subsection 3 of 463.0129 had deemed lawful the exclusion of card counters by expressly reserving to casinos the common law right to exclude anyone for any reason. Counsel, you just – you used an interesting word. You just said the common law right. Unfortunately, that's not what the statute said. If the statute said that, it would be a lot clearer, but it doesn't. It says any common law right. It does say any common law right, Your Honor. You're correct. So what we do now is we turn, as we must when examining the common law, to the jurisprudence of the Nevada courts for the past 30-something years, both state and federal, which jurisprudence, which cases in interpreting this statute, clearly validate the common law right of a casino to exclude any patron for any reason without any showing of cause. And tellingly, Mr. Franceschi can cite no authority, no Nevada authority certainly, of any kind which would remotely stand for the proposition that Nevada casinos somehow owe a right of access to gamblers. Every one of these decisions, and we've cited them all in our briefs, and I can walk through them with you if you would like, have held against the card counter in that circumstance. The only thing he can point to is the New Jersey case of Houston, which is completely inapplicable. What's the best Nevada case on the proposition that's teed up here? I've gone through the Nevada cases, and they each seem to be distinguishable in some fashion. Part of the problem may be that the question wasn't teed up for the Nevada Supreme Court in quite the same way, but what are we to make of that in terms of has it been, I've forgotten the phrase, legally deemed lawful? Is that answer quite as crystal clear as it needs to be for the purposes of the California statutes? I think it is for the simple reason that when you read all the cases together, Your Honor, you come to the inescapable conclusion that card counters do not have rights of access in Nevada. Starting in 78, the Federal District Court of Houston v. Hilton, card counter case, civil rights, constitutional claims, court rejected and held that there's no affirmative act on the part of the State of Nevada to compel casinos to admit card counters. Judge Foley made that finding. In 1983, the Nevada Supreme Court in Spalatro v. State held that there is no constitutional right of access to businesses, such as casinos, that are generally open to the public. In this Court's 2007 unpublished decision of Matties v. Bally's, which cites, too, this Court's 1977 decision of These are very helpful because in Matties the Court held that gamblers do not have established rights to continue gambling at casinos. This is under Nevada law, and they further held that there was no special relationship between a casino and a gambler, and therefore no special duties owed. It cited the Houston v. Airport casino case of 1977, which held that the casino-gambler relationship is not akin to the innkeeper-patron relationship, and therefore the special common-law duty of innkeepers was not applicable to card counters. The same societal reasons for having the innkeeper law are just simply not present when it comes to gamblers. And finally, the 2001 Nevada Supreme Court case of S.O.C. v. Hillsborough, which, albeit not a gambler case, was one where the Nevada Supreme Court held that the right to exclude is a fundamental element of private property ownership. And I think to answer your question, Your Honor, I think those cases standing together clearly validate the common-law notion, alive and well in Nevada, that the gambler, particularly a card counter, has no right of access to a Nevada casino. The only thing they can point you to is Houston. The 1982 New Jersey Supreme Court case, which on its face, as I think the Court is aware from the oral argument from the appellant, is plainly not applicable. New Jersey statutory scheme that created gambling there, their Casino Control Act, expressly abrogated the common law, including the common-law right to exclude, expressly. In Nevada, we have the opposite. They couldn't be more different. Subsection 3 of the statute expressly did not abrogate the common law and reserve to casinos any common-law right to exclude for any reason. And then, as I said, in the Houston v. Hilton case, the Court held there was no affirmative obligation on the part of the State to compel casinos. to admit card counters. So the statutory schemes are completely different. One abrogated the common-law right to exclude. One expressly reserved it. Houston was decided on that basis and that basis only. There is a discussion about the common law and how New Jersey might depart from the common-law rule. That discussion is dicta. And as far as I can tell, in the briefs that have been put before the Court, no other case has adopted it. Other cases have looked at it and expressly chosen not to follow the New Jersey discussion in dicta of the common-law rule. So. Counselor. Yes. Let me ask you this question. It seems to me that under the consumer protection laws in California, there would be a safe harbor for the defendants. But I thought that the laws kind of laid it out. If the legislation has specifically permitted a practice. Now, my worry is that there is legislation. But this legislation doesn't specifically allow the practice. This legislation only says let the judges decide. Is that a distinction that we can draw? Your Honor, I think the intent, the legislature's intent was clearly to retain any common-law right to exclude any person for any reason. In order for this to have some meaning, I think what we have to conclude is that they're putting this in there for a reason. So, I mean, my idea about this question is, is it the legislature that's providing the safe harbor as California seems to be implying? Or is it the courts? And is that a distinction which makes this a different question? I think the legislature has, in fact, provided the same harbor if we're going to at all give meaning to subsection 3. And then that safe harbor is validated by the decisional law, federal and state, over 30 years in this state. Your Honor, the last point I'd like to make is this, is that Mr. Franceschi now There isn't very much specificity here in this statute. In fact, it's just kind of laid out, whatever the courts say. So you're suggesting that how Nevada has laid it out is clear, then, that they seems to me to lay it out in a very functional manner, whatever the courts say, which doesn't seem to go exactly with the way California does it. I understand your concern, Your Honor, but for that provision to have any meaning, it would have to mean that the common law right to exclude is preserved. Otherwise, we would have to read that out entirely in order to get to the place that the appellant wants you to get. The last point I'd just like to make in my very brief time is this. The appellant has made the assertion that this is not about regulating conduct. This is about the ads, is what he wants to say. That assertion is simply not correct. Paragraph 32 of his complaint directly alleges that it is the defendant's policy and practice of barring skillful players at blackjack is an unlawful business practice, an unfair, I'm sorry, business practice. That is his allegation. The relief he seeks in Section 7 of his prayer is an induction prohibiting the casinos from advertising in California unless and until they cease and desist from the unfair business practice of barring blackjack players. My point here, Your Honors, is this. This case, like every other card counter case before it, is about gaining access to casinos for card counters. They want to get in. They want to play. They want to beat the system. And they want to make money. There is nothing altruistic about it. The card counters have tried every imaginable legal theory, fraud, RICO. You're over time. I think we have your voice. I'm over time. Thank you very much for this opportunity. Thank you. For what's left of your minute. Thank you, Your Honors. And as Judge Smith pointed out, the law in California is exactly that. There has to be a legislative pronouncement that an act is unlawful for the safe harbor to apply. And the last thing I'd like to say is that this case was decided without any evidence, not even briefing. This is Judge Hunt's imagination of what the evidence would be. And that's an inappropriate way to decide cases. That's sous-spante dismissal violated due process. And I would ask the Court to reverse it. How about the question I posed to you that you were going to find the answer to while you were sitting down? I did not find the answer to that. It's intermixed throughout the brief. Poor draftsmanship. I apologize for that. Thank you. We thank both counsel for the argument.
judges: Clifton, Bybee, Smith